■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDMUND K. NORTON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Tsoucalas, J.), rendered December 19, 1980, convicting him of robbery in the first degree (three counts), upon a jury verdict, and sentencing him to concurrent prison terms of 5 to 15 years. Judgment modified, as a matter of discretion in the interest of justice, by reducing the sentences imposed to concurrent terms of imprisonment of two to six years. As so modified, judgment affirmed. On December 19, 1979, in the early morning hours, three men were robbed in a Queens bar called Downes Pub. Two of the men, Peter Dankel and Martin Ryan, identified defendant as the robber. The third man, the bartender, could not make a positive identification. The evidence adduced at trial was that defendant came in and sat drinking for about an hour. He then bought Dankel a drink. Within 15 minutes thereafter (about 2:45 A.M.), when the door had been locked and the lights turned up in preparation for closing, defendant pulled out a gun and told the three men to turn over their money and the money from the cash register. At first the victims thought defendant was joking. Defendant took the money, however, left the bar and got into an old blue car. Because it took several minutes to start the car, the three men were able to write down the car's license plate number. A fourth man, Thomas Lotz, who had been in the bar but left before the robbery, testified that he and defendant, a man he knew by his first name from seeing him in the bar in the neighborhood, exchanged greetings in the bar sometime between 1:30 A.M. and 2:30 A.M. Defendant was arrested when the police located the automobile bearing the license plate number given by the witnesses (although they had failed to note that the plate was a Pennsylvania one) outside defendant's residence. Defendant asserted an alibi defense. Both defendant and his wife testified that he was at home at the time the robbery took place. His wife remembered the time because their daughter was ill, and she was awake with the child at 1:15 A.M. when defendant came home. In addition, the child woke her at 3:30 A.M. and defendant was asleep in bed. Defendant denied knowing Tom Lotz and stated that he, the defendant, had never been in Downes Pub. On appeal from his conviction, defendant first contends that the court improperly instructed the jury on his defense of alibi and that, although there was no objection at trial, he is nonetheless entitled to a new trial. We do not agree. Although the trial court employed certain language in its instruction on alibi of which this court has disapproved (see, e.g., *People v Fludd,* 68 AD2d 409, 411), the error in the present case was not compounded by other errors and we conclude that, taken as a whole, the instruction was not prejudicial. We are persuaded that the jury considered the alibi as it properly should have. We note, for example, that the jury was told that if defendant's alibi was sufficient to raise a reasonable doubt concerning defendant's whereabouts at the particular time when the crime was commit-

ted, he was entitled to an acquittal. Moreover, the court reiterated, shortly after giving the alibi instruction, that the People had the burden of proving every element of the crimes charged beyond a reasonable doubt and that defendant was presumed innocent and was entitled to every reasonable doubt arising out of the evidence or lack of evidence. Thus, it is our view that the jury rejected the alibi testimony most likely because it was weak and insufficient to raise a reasonable doubt in light of the eyewitness testimony and the fact that the license plate number of the car which the robber used was later found to belong to defendant. We note in passing that in addition to the plate number, the description of the car that was given by the witnesses at the time of the robbery (an old blue car) also matched defendant's car. Defendant further contends that his identification resulted solely from an unlawful arrest and, therefore, that the trial identifications should be suppressed. Even assuming, *arguendo,* that the arrest was unlawful, since the arresting officer's knowledge of defendant's identity, from the license plate number and the victims' independent recollections of defendant gained at the time of the commission of the crime, antedated the "unlawful" arrest, the identifications were untainted by any constitutional violation (see *United States v Crews,* 445 US 463). Furthermore, the record supports the determination made after the *Wade* hearing that the eyewitnesses Dankel and Ryan had a strong basis for their in-court identifications of defendant. They viewed defendant in the bar off and on for about an hour before the robbery. About 15 minutes before the robbery, Dankel took particular notice of the defendant when he bought Dankel a drink. About that time the lights of the bar were turned up preparatory to closing. Ryan's attention became concentrated on defendant, supplementing Ryan's prior views of him, when defendant pulled out a gun and demanded the man's money. We do agree with defendant that the sentences are excessive to the extent indicated above. Defendant is 43 years of age, has no prior felony convictions, and, notwithstanding that a gun was displayed, so unthreatening was his manner that the victims — none of whom was even slightly injured — thought defendant was joking. An examination of defendant's remaining contentions, however, shows them to be without merit. Damiani, J. P., O'Connor, Rubin and Boyers, JJ., concur.